WILLIAM BAKER, RESPONDENT, v. MORRIS AND HANNAH MINKEN, APPELLANTS.

Submitted May 4, 1937—Decided July 7, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the appellants, *Harry J. Weiner*.

For the respondent, *Henry Harris*.

The opinion of the court was delivered by

PARKER, J.   The suit is for damages for personal injury sustained by falling down a staircase at night, in a building situate in Linden, in this state, owned by defendants; plaintiff claiming that the staircase was unlighted.   There was a dispute on that point which was properly left to the jury to settle.   The critical question in the case was whether the building itself was within the statutory definition of a "tenement house;" plaintiff asserting that it was, and defendant denying it.   The only available ground of appeal is the first, that the trial court refused a nonsuit.   The other three do not challenge any ruling in point of law, but are involved in a decision of the first.

The definition of a tenement house in chapter 61 of the laws of 1904 (*Pamph. L., p.* 96) was modified by chapter 10 of 1918 (*Pamph. L., p.* 68) to read:

"A tenement house is any house or building or portion thereof 'which is rented, leased, let, or hired out to be occupied or is occupied as the home or residence of three families or more, independently of each other, and doing their cooking upon the premises.' "

This was further modified in 1927 (*Pamph. L., p.* 789) by adding a proviso relating to cities bordering on the Atlantic ocean, which does not apply to this case.

The building in question, taken as a whole, seems to have been a detached building, fronting on a street.   The case contains no picture of it, nor any floor plan or elevation. What we gather from the oral testimony is that the ground floor, front to rear, was used as a store, probably with reservation of space for halls and stairways leading to the two or more upper floors.   The feature stressed by the defense, and claimed to remove the building from the tenement house class, is that the whole was transversely bisected by a partition wall with no opening therein, dividing it into a front and a

rear portion above the stores, each portion arranged for two families and no more, and each portion reached only by its separate outside entrance, hallway, and stairs. The witness Bass, for defendants, testified in part on cross:

"*Q*. There are four families living in the house, but they don't use—— *A*. There are two separate houses attached. They are definitely divided right from the cellar to the roof. *Q*. They are under one roof, aren't they? *A*. No, sir, I wouldn't consider it one roof. I would consider it two roofs. Because the slope of the roof is definitely divided. *Q*. But the walls are joined; there is no alley-way between them? *A*. No, but you can tear down one building and the other building would still be a two-family building. *Q*. But it is all on one lot? *A*. Correct. *Q*. A store on the bottom, and one tenant over it, and another tenant over him? *A*. There is a basement store. What I mean by a basement store, it is used—instead of a basement, they used it for a store, probably for some storage, maybe a meeting house for somebody, and two families upstairs. The back has the cellar, and two families upstairs. *Q*. There are two families living in the front and two families living in the rear? *A*. That is correct, with a party wall in between."

The plaintiff testified, also on cross: "It is four families lives in the house, and underneath was a store front and on the other end is a store front." The word "basement" used by Bass, we take to mean the part on the ground level. It may be the fact that the cross party wall starts from the foundation; and perhaps has no opening through it. But assuming these matters most favorably for defendant, we still think the building as it stood was a single building occupied by four families and under one ownership and one management, and properly classed as a tenement house. The judge left this question to the jury as one of fact, though in our estimation he might well have decided it himself, and in that event should have decided it as the jury did. In view of the verdict the plaintiff suffered no harm thereby. The same may be said of another point made for plaintiff but not dealt with by the court, *i. e.*, that there was common law liability as well.

We conclude that the case was properly submitted to the jury and this leads to an affirmance of the judgment under review.